# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MIGUEL CHAVARRIA, JR., *Plaintiff,* v. PHILADELPHIA GAS WORKS et al., *Defendants.* | CIVIL ACTION NO. 19-4428 |

**PAPPERT, J.**                                                        February 3, 2020

## MEMORANDUM

After Miguel Chavarria filed an internal discrimination complaint with his employer Philadelphia Gas Works, PGW began an investigation. Soon thereafter, Chavarria claims that PGW's management implemented various policies in retaliation for his and other African American employees' participation in the investigation. Chavarria now sues PGW and his union, Gas Works Employees' Local 686, alleging retaliation, hostile work environment, disparate treatment discrimination and disparate impact discrimination on the basis of his race, color and national origin in violation of Title VII and the Pennsylvania Human Relations Act.[1] PGW filed a Motion to Dismiss the disparate impact claim, which the Court grants for the reasons that follow.

---

[1] The same legal standards apply to Title VII and Pennsylvania Human Relations Act claims, so the Court will refer only to Title VII for the remainder of this opinion. *Crawford v. Verizon Pa., Inc.*, 103 F. Supp. 3d 597, 603 (E.D. Pa. 2015) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 409 (3d Cir. 1999)).

1

I

Chavarria is an African American man of Costa Rican descent who began working for PGW in 1992. (Am. Compl. ¶¶ 10–12, ECF No. 8.) In 2006, he became a foreman and is currently employed at PGW's Gas Processing Operations Passyunk Plant. (*Id.* ¶¶ 12–13.)

Chavarria alleges that the Passyunk plant has been understaffed since 2013. (*Id.* ¶ 19.) Despite the staffing shortages, Chavarria claims that General Supervisor David Martinez and Plant Manager Brian McGuire "continue to violate scheduling, overtime, vacation and other PGW employment policies." (*Id.* ¶ 23.) For example, he alleges that Martinez ignored the seniority guidelines applicable to vacation time by denying Chavarria's vacation request while, at the same time, granting vacation to a non-minority employee with fewer years of service at PGW. (*Id.* ¶ 23(c).) Chavarria further alleges that McGuire manipulated the work schedule to "segregate and give preferential scheduling to non-protected class (Caucasian) employees." (*Id.* ¶ 23(d).) Martinez also allegedly scheduled Chavarria to work more days on a truck unloading project compared to his Caucasian colleagues. (*Id.* ¶ 23(e).)

In December of 2017, Chavarria filed an internal complaint with PGW alleging discrimination against African American, black and brown employees. (*Id.* ¶ 30.) PGW management began investigating and interviewed several employees, including Chavarria. *See* (*id.* ¶ 33). During the investigation and continuing thereafter, Chavarrria alleges that the work environment at the Passyunk plant became unsafe and hostile, with plant management making and enforcing new rules. (*Id.* ¶¶ 34–35.) For example, he avers that Martinez issued an order "prohibiting the use of plant

vehicles by union employees for their job performance except with permission from management." (*Id.* ¶¶ 15(d), 36.) Martinez also began enforcing an old HR personnel policy that prohibited employees from using personal electronics devices at the Passyunk plant. (*Id.* ¶ 37.) But, according to Chavarria, Martinez only imposed the rule against black and brown employees. (*Id.*)

II

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). This plausibility determination is a

"context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

III

A

Count IV of the Amended Complaint alleges a Title VII disparate impact claim on the basis of race, color and national origin. (Am. Compl. ¶¶ 60–64.) Chavarria avers that PGW's "policies and practices of plant vehicles, electronics, scheduling work assignments and overtime," created a disparate impact on protected class members, including himself. (*Id.* ¶ 61.) In asking the Court to dismiss Count IV, PGW argues that Chavarria fails to plead sufficient facts to allege specific employment policies or that such policies had a disparate impact on members of a protected class. *See generally* (Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 11).

To establish a *prima facie* disparate impact claim, the plaintiff must show that a facially neutral employment policy or practice resulted in a significantly discriminatory pattern. *Lanning v. SEPTA*, 181 F.3d 478, 485 (3d Cir. 1999). To do so, the plaintiff must first identify a specific employment practice or policy to challenge. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988) (plurality opinion). He then must prove causation by offering statistical evidence sufficient to show that the practice or policy at issue resulted in discrimination. *Id.* In these cases, the employer acts without an intentional or deliberate discriminatory motive. *United States v. Pennsylvania*, 110 F. Supp. 3d 544, 549 (M.D. Pa. 2015).

The burden on a Title VII plaintiff at the motion to dismiss phase, however, "is much less onerous." *Ladd v. Boeing Co.*, 463 F. Supp. 2d 516, 523 (E.D. Pa. 2006)

4

(quoting *Powell v. Ridge*, 189 F.3d 387, 394 (3d Cir. 1999), *overruled on other grounds by Alexander v. Sandoval*, 532 U.S. 275 (2001)). To survive dismissal, all Chavarria must do is plead facts sufficient to allege that a facially neutral policy or practice's adverse effects fall disproportionately on a group protected by Title VII to which he belongs. *Ladd*, 463 F. Supp. 2d at 523.

B

Chavarria's disparate impact claim identifies four different policies—use of plant vehicles, electronics, scheduling work assignments and overtime—which the Court addresses in turn. *See* (Am. Compl. ¶ 61).

1

The Court understands "the use of plant vehicles" policy to refer to Martinez's policy of "prohibiting the use of plant vehicles by union employees for their job performance except with permission from management." (*Id.* ¶¶ 36, 61.) According to Chavarria, management established this policy in retaliation for his and other African Americans' participation in the internal race discrimination investigation. (*Id.* ¶ 41.)

Although Chavarria identifies a specific policy, his conclusory allegation that the policy "adversely impacted[ed] protected class members" is insufficient to withstand a motion to dismiss. (Am. Compl. ¶ 63); *see, e.g., Knox v. PPG Indus., Inc.*, 2016 WL 279004, at *6–7 (W.D. Pa. Jan. 22, 2016) ("While Plaintiff does employ some disparate-impact buzzwords in her complaint—e.g., she claims that PPG's policies 'adversely impacted' women—these 'are bare legal conclusions, not facts[,]' [. . .], and thus cannot carry Plaintiff's claim over the plausibility threshold."). Indeed, Chavarria provides no facts anywhere in the Amended Complaint to support his allegation that the vehicle

5

policy had a disparate impact on African American, black or brown employees. That management created the policy as a retaliatory response to the internal investigation also makes clear that it was one of *intentional* discrimination. Chavarria accordingly fails to allege a disparate impact claim with respect to the vehicle policy.

2

Chavarria's next allegation involves a "no electronics" policy that Martinez purportedly enforced "against protected class members (black, brown) [but] not against non-protected (white) members." (Am. Compl. ¶¶ 15(d), 37.) He references a specific instance in which Martinez prohibited a black employee from using a personal electronic device, "citing HR Personnel Policy #003-5 (effective 8/10/2007)," but allowed a white employee to use a radio. (*Id.* ¶ 37.)

Chavarria fails to state a disparate impact claim with respect to the "no electronics" policy because PGW management purportedly applied the rule in a deliberately discriminatory fashion. That Martinez allegedly only enforced the rule against protected class members indicates that Chavarria's claim is one of *intentional* discrimination—not the result of adverse effects from a facially neutral policy. *See Pennsylvania*, 110 F. Supp. 3d at 549 (explaining disparate impact claims do not involve intentional discriminatory motives).

3

Chavarria's final effort to state a disparate impact claim involves allegations that PGW's "scheduling work and overtime" had a disparate impact on protected class members. (Am. Compl. ¶ 61.) In making this allegation, however, he fails to identify "specific employment practice[s]." *Watson*, 487 U.S. at 994. Instead, Chavarria cites to

a vague policy of Martinez "ignoring seniority guidelines," (Am. Compl. ¶ 23(c)), and creating schedules to segregate workers on the basis of race. (*Id.* ¶ 23(e)–(d).) But nowhere in the Amended Complaint does he refer to a specific vacation or scheduling policy, nor does he even mention any type of overtime policy.

Even if Chavarria could plead specific policies, his allegations against Martinez and McGuire suggest intentional discrimination against minority employees. Such contentions do not give rise to a disparate impact claim. Simply equating his personal observations with a PGW policy does not make them so. *See Hanrahan v. Bank Rome LLP*, 142 F. Supp. 3d 349, 354 (E.D. Pa. 2015) (explaining that plaintiff's observations regarding law firm hiring practices fails to equate to a specific employment practice). Chavarria has accordingly failed to state a Title VII disparate impact claim and the Court dismisses Count IV with respect to Defendant PGW.

IV

Courts should freely give leave to amend a complaint when justice so requires. Fed. R. Civ. P. 15(a)(2). "This certainly includes amendment to cure defective allegations." *Shifflett v. Korszniak*, 934 F.3d 356, 366 (3d Cir. 2019) (citing 6 Wright & Miller, *Federal Practice and Procedure: Civil* § 1474 (3d ed. 2019)). Chavarria is free to amend Count IV consistent with this Memorandum and to the extent he can allege facts sufficient to state a plausible claim for relief.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.