# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH DEAN,<br><br>                *Plaintiff*,<br>v.<br>PHILADELPHIA GAS WORKS, et al.,<br>                *Defendants*. | CIVIL ACTION<br>NO. 19-04266 |
| DWAYNE ACKIE,<br><br>                *Plaintiff*,<br>v.<br>PHILADELPHIA GAS WORKS, et al.,<br>                *Defendants*. | CIVIL ACTION<br>NO. 19-04275 |
| WAYNE RAUCEO,<br><br>                *Plaintiff*,<br>v.<br>PHILADELPHIA GAS WORKS, et al.,<br>                *Defendants*. | CIVIL ACTION<br>NO. 19-04279 |
| MIGUEL CHAVARRIA, JR.,<br><br>                *Plaintiff*,<br>v.<br>PHILADELPHIA GAS WORKS, et al.,<br>                *Defendants*. | CIVIL ACTION<br>NO. 19-04428 |

| | |
|---|---|
| MAURICE GOODWIN,<br><br>*Plaintiff,*<br><br>v.<br><br>PHILADELPHIA GAS WORKS, et al.,<br><br>*Defendants.* | CIVIL ACTION<br>NO. 19-04429 |

**PAPPERT, J.**                                                                                           December 28, 2020

### **MEMORANDUM**

     Karin Gunter and Isaac Green, Jr. represent plaintiffs in five discrimination cases against Philadelphia Gas Works ("PGW") and Gas Works Employees' Union Local 686. Following an adverse ruling in a discovery dispute, Ms. Gunter moved to disqualify the Court in her four cases, claiming I had failed to disclose my representation of PGW over six years ago while in private practice. Ms. Gunter then shared her theory with Mr. Green, who moved to disqualify the Court in his case a few days later. PGW and the union responded to the motions and the Court heard oral argument on December 3, 2020. The Court denies the motions.

I

     Whether a judge's impartiality can reasonably be questioned is a decision to be made "in light of the facts as they existed, and not as they were surmised or reported." *Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 541 U.S. 913, 914 (2004) (Scalia, J.) (citing *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000) (Rehnquist, C.J., respecting recusal)). From November 2012 to December 2014, I was a member of the Cozen O'Connor law firm. In 2014, Cozen O'Connor represented PGW, it's manager the Philadelphia Facilities Management Corporation ("PFMC") and Danella Companies,

2

Inc. on an appeal from a favorable Pennsylvania state court judgment in *Harris v. Philadelphia Facilities Mgmt. Corp.*, No. 39 C.D. 2014, 106 A.3d 183 (Pa. Cmmw. Ct. 2014).  On March 3, 2014, an associate and I entered our appearance on the Commonwealth Court docket for PFMC and PGW.  We filed a brief on behalf of PFMC and Danella on August 1, 2014.

*Harris* involved a motorcyclist who was injured near excavation and road restoration work being performed by Danella pursuant to a contract with PGW.  *Id.* at 184–85.  In that contract, Danella indemnified PGW and agreed to defend against any lawsuits, with counsel to be selected by Danella.  Cozen O'Connor was retained by Danella only for the post-trial appeal; it did not represent Danella or anyone else at trial.  PFMC and PGW's involvement in the appeal was a technicality given Danella's full contractual responsibility for any judgment or award.  Consequently, I never performed any legal work for either entity or spoke to anyone at either entity about the case.  I reported solely to Danella and Danella paid Cozen O'Connor's fees.  According to counsel for PGW, the company paid Cozen O'Connor approximately $19,800 for tax-related legal work during my tenure there.  I was not involved in providing those services.

## II

### A

On September 17, 2019, Ms. Gunter filed lawsuits on behalf of Dwayne Ackie (No. 19-cv-4275) and Wayne Rauceo (No. 19-cv-4279) against PGW and Local 686.  One week later, she filed similar suits on behalf of Miguel Chavarria, Jr. (No. 19-cv-4428) and Maurice Goodwin (No. 19-cv-4429).  These cases were originally assigned to Judge

3

Robert Kelly, but shortly before Judge Kelly retired, the Clerk's Office reassigned the cases to me "in accordance with the court's procedure for random reassignment of cases." *See, e.g.*, (Rauceo Reassignment Order, ECF No. 2).

Mr. Green filed a remarkably similar case on behalf of Joseph Dean (No. 19-cv-4266)—apparently without prior consultation with Ms. Gunter—also on September 17, 2019. Unlike Ms. Gunter's cases, Mr. Green's was randomly assigned to me when filed.

In each of these five cases, the Court has adjudicated motions to dismiss, established scheduling orders and handled other matters as necessary. Until recently, the Court did so without incident.

B

On November 2, 2020, Ms. Gunter moved on behalf of Chavarria to compel discovery from PGW. (Motion to Compel, ECF No. 35.) Prior to these lawsuits, PGW hired outside counsel to investigate claims related to Chavarria. Counsel produced a memorandum detailing its findings. During discovery in Chavarria's case, PGW produced a redacted version of the memorandum, claiming the redacted portions were irrelevant to Chavarria's claims or protected by privilege. Ms. Gunter sought disclosure of the unredacted memorandum. The Court scheduled a telephone conference with Ms. Gunter and the lawyers for PGW and Local 686, Brett Zahorchak and Nicholas Botta, respectively. All parties agreed with the Court's suggestion that it conduct an *in camera* review of the memorandum to determine whether PGW's claims of privilege and relevancy were justified.

Ms. Gunter then said she would again seek an extension of the fact discovery period. She did so at the beginning of October, but the Court denied the request

because it was premature, as more than a month remained in the discovery period. *See* (Order Denying Extension, ECF No. 34). Ms. Gunter explained that she had not taken all of the depositions she intended to take, at least in part because of difficulties related to the COVID-19 pandemic and her busy schedule as a sole practitioner. Mr. Botta stated that although the union had not opposed Ms. Gunter's October request, it opposed this one because the delays Ms. Gunter complained of were avoidable and self-imposed. Counsel said that he held approximately fifteen days open for depositions with Ms. Gunter within the discovery period. Ms. Gunter either ignored his proposed dates or was unable to conduct depositions on any of those days. Moreover, when Mr. Botta and Ms. Gunter finally agreed on a deposition date for one witness, Ms. Gunter failed to notice the deposition and never took it.

Ms. Zahorchak explained that on August 28 she also gave Ms. Gunter a number of dates for depositions and held those dates open through September. According to counsel, Ms. Gunter did not take advantage of any of those dates either. Ms. Gunter claimed this wasn't true, prompting the Court to ask her what reason counsel for PGW and the union had to lie, a question with which Ms. Gunter apparently took issue. Frustrated by counsels' inability to conduct discovery according to the Court's scheduling order or work out basic issues themselves, the Court instructed counsel to schedule the depositions as soon as possible. At some point during this discussion, the Court also asked the parties about the schedule for summary judgment motions.

Following this telephone conference, the Court received and promptly reviewed the unredacted memorandum. It determined that PGW's objections were justified; the redacted portions of the memorandum were either irrelevant to the litigation or

5

protected by privilege. The Court issued an order on November 6 denying Chavarria's motion to compel. (ECF No. 39.)

C

Ten days later, Ms. Gunter filed motions pursuant to 28 U.S.C. § 455(a) to disqualify the Court from her four cases. That statute requires a federal judge to disqualify himself in any case "in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Ms. Gunter primarily alleges that I had served as outside counsel to PGW when at Cozen O'Connor in 2014. (Rauceo Mot. to Disq. 3, ECF No. 28-1.)[1] She argues this alleged representation and the Court's failure to disclose it would cause an objective person to reasonably question my impartiality. (*Id.*)

Ms. Gunter raises several other arguments for disqualification. She thinks PGW's counsel unwittingly revealed a secret relationship between the Court and PGW during the November 5 telephone conference. (*Id.*) According to Ms. Gunter, Ms. Zahorchak prefaced an explanation about PGW's public procurement process with the phrase, "As you know, Your Honor." (*Id.*) Her use of that prefatory phrase, according to Ms. Gunter, implied the Court's intimate knowledge of PGW's inner workings and would thus lead an objective person to reasonably question the Court's impartiality. *See* (*id*). Moreover, she alleges that "[c]ertainly" Ms. Zahorchak was aware that the Court had served as outside counsel to PGW and failed to disclose the relationship during the course of the litigation. (*Id.* at 5.)

---

[1] Ms. Gunter's motions on behalf of Rauceo, Ackie, Goodwin and Chavarria are identical in substance. For ease of reference, the Court will cite only the Rauceo motion. Such citations should be understood to reference all four motions.

6

Ms. Gunter also claims the Court's policy that scheduling conflicts and obligations in other cases are not compelling reasons for discovery extensions contradicts my representation to the United States Senate during my confirmation process. Specifically, Ms. Gunter dug up my Senate Judiciary Committee Questionnaire, (*id.* at 4 n.2), where I expressed the desire to avoid "a failure to understand the pressures and responsibilities of the lawyers" in cases before me. Ms. Gunter thinks this alleged conflict between my Policies and Procedures and my statement to the Committee further supports disqualification. (*Id.*) Ms. Gunter also claims that because of "the number of actions presently before Judge Pappert, . . . his inquiry about summary judgment scheduling [during the November 5 telephone conference] and his strict adherence to his policies and practices . . . ,Plaintiff does not reasonably belief [sic] Judge Pappert can be or is impartial in these matters." (*Id.* at 4.) Finally, Ms. Gunter thinks that in hiding from her my purportedly long and close relationship with PGW I violated Judicial Code of Conduct Canon 2, requiring judges to avoid the appearance of impropriety in all activities. (*Id.* at 5.)

As evidence of that alleged relationship, Ms. Gunter attached to her motion the Pennsylvania Commonwealth Court docket for the *Harris* case. (Rauceo Mot. to Disq., Ex. 3, ECF No. 28-5.) Ms. Gunter has nothing else supporting her suspicions. Similarly, she cites no factually analogous cases in support of her position, relying entirely on her own interpretation of the text of § 455(a) and two Third Circuit decisions articulating the standard applicable to motions under § 455(a). (*Id.* at 2–5.)

Two days later, Mr. Green filed a nearly identical motion. (Dean Mot. to Disq., ECF No. 47.) Mr. Green's motion repeated the allegations in Ms. Gunter's motions. He

did not raise any new arguments and failed as well to cite any real support for his position. *See* (*id.* at 2–6).

PGW and Local 686 present a drastically different version of events than Gunter and Green, most notably, their understanding (supported by sworn declarations from Ms. Zahorchak and PGW's General Counsel) that neither PFMC nor PGW was my client in the *Harris* case. (PGW Resp. to Rauceo Mot. to Disq. 4–6, ECF No. 30); *see also* (Union Mot. Joining PGW Resp., No. 19-4275, ECF No. 48). Ms. Zahorchak also represents that she "had no personal knowledge of Judge Pappert's entry of appearance on behalf of PGW in any matter until" Plaintiffs filed their motions to disqualify. (*Id.* at 5.)

### D

During oral argument, Ms. Gunter reiterated that she filed her motions after "careful thought and consideration." *See* (Rauceo Mot. to Disq. at 1); (Hr'g Tr. 6:5–20). She decided on November 14 to seek my disqualification after coincidentally discovering the *Harris* case during an "arbitrary review of [the] Commonwealth Court docket in another unrelated matter." (Hr'g Tr. 12:18–24); (Rauceo Mot. at 5.) Her basis for the motions "had to do largely" with the Court asking why opposing counsel would lie during the November 5 telephone conference—a comment she found "off-putting"—and Ms. Zahorchak's use of the phrase, "As you know, Your Honor." (Hr'g Tr. 7:10–21, 8:11–14, 30:4–14.) Ms. Gunter claimed that had she known I had been a partner at a firm she believed was outside counsel for PGW, she would not have agreed to the Court's *in camera* review of the document at issue in the discovery dispute. (*Id.* at 8:17–9:2.) To Ms. Gunter it also "seemed odd" that her cases were reassigned to me

from Judge Kelly's docket, suggesting the reassignment was not entirely random and perhaps related to my alleged relationship with PGW. (*Id.* at 14:25); *see* (Rauceo Mot. at 1).

In reality, as I explained to Ms. Gunter, my query about defense counsels' purported reason to lie during the November 5 telephone conference was based on my conclusion that their explanation for the discovery delay was more credible than hers. (Hr'g Tr. 10:15–23.) I also noted that lawyers frequently use the phrase, "As you know, Your Honor," when speaking with the Court and that I did not notice the phrase during the November 5 conference. (*Id.* at 31:14–20.) I explained that cases are randomly assigned and that her cases were likely randomly reassigned on account of Judge Kelly's then impending retirement. (*Id.* at 15:4–5, 21–22.) Most importantly, I explained my involvement in the *Harris* case and Ms. Gunter acknowledged that *Harris* and her cases are completely unrelated. (*Id.* at 23:5–9.)

Ms. Gunter also acknowledged that she does not have a professional relationship with Mr. Green, nor does she know him personally. (*Id.* at 52:21–54:4.) In fact, she claimed she would not recognize him if he walked into the courtroom. (*Id.* at 53:23–25.) Yet she texted Mr. Green when she filed her motions, sent him a copy of one of them and encouraged him to seek my disqualification in his case as well. (*Id.* at 58:17–59:7, 61:9–12.)

For his part, Mr. Green several times attempted to distance himself from his filing, saying "the ultimate decision to proceed was made by the client." (*Id.* at 62:25–63:1.) Despite this blame-shifting, Green—who had never filed a motion to disqualify a judge in thirty-eight years of practice—also claimed to have filed the motion after

9

careful thought and legal research. (*Id.* at 64:17–22, 65:5–6, 66:7–16.) It became clear that Mr. Green did not independently research the factual claims in his motion. And he failed to cite any factually analogous authority in support of his position. What he did was take Ms. Gunter's motion, largely plagiarize it and then file it as his own.

Ms. Zahorchak emphasized the frivolousness of Ms. Gunter's and Mr. Green's motions, saying "they never should have been filed in the first place." (*Id.* at 76:6–8.) In her estimation: "At best, they were negligently researched, and at worst, they willfully ignored the applicable law surrounding Section 455, and they willfully ignored the facts as they actually existed with respect to both the nature of the *Harris* matter and any alleged past relationship between PGW and Cozen O'Connor and/or Your Honor." (*Id.* at 76:8–14.) Neither Ms. Gunter nor Mr. Green notified her before they filed their motions, (*id.* at 76:21–23), and Ms. Gunter made baseless assertions about her and what she was "certainly" aware of in her motions. (*Id.* at 77:17–20.) Ms. Zahorchak concluded by asking the Court to sanction Ms. Gunter and Mr. Green. (*Id.* at 78:10–16.)

Mr. Botta endorsed Ms. Zahorchak's argument and added that Ms. Gunter's claim that the union was aware of the Court's alleged prior relationship with PGW is also unfounded. (*Id.* at 81:2–9.)

E

A little more than one month before Ms. Gunter filed her motions to disqualify me, she tried to do the same thing, using similar tactics and arguments, to Judge Marston. *See Fields v. American Airlines, Inc.*, No. 19-cv-903, 2020 WL 5943694, at *6 (E.D. Pa. Oct. 7, 2020). In *Fields*, Ms. Gunter represents three plaintiffs alleging

10

discrimination against their employer, American Airlines. Judge Marston held a Rule 16 conference and issued a scheduling order. Apparently unhappy with how the conference went, Ms. Gunter sent the Court a letter claiming her clients "were disadvantaged by the Court's 'request to know the specific people proposed for depositions as well as the requirement to provide specific dates for those proposed depositions.'" *Id.* at *3 (citing Ltr. to Judge Marston from Karin Gunter, Mar. 16, 2020). Ms. Gunter also asked, "'why the Court is requiring Plaintiffs to provide it with specific proposed deposition dates and why specific names of deponents are needed at this time.'" *Id.*

A few days later, Ms. Gunter moved to disqualify Judge Marston. She alleged that an objective person would reasonably question Judge Marston's impartiality because, around 2012 while serving as an Assistant United States Attorney, Judge Marston had prosecuted two US Airways[2] employees and nine other defendants for drug trafficking. *Id.* Ms. Gunter questioned Judge Marston's impartiality because her "frequent contact with U.S. Airways legal affairs department and its managing director, Karen Gillen[,] was crucial to Judge Marston's prosecutorial successes" eight years prior. *Id.* (quoting *Fields* Mot. to Disqualify) (internal quotation marks omitted). As here, Ms. Gunter referenced Judge Marston's Senate Judiciary Committee Questionnaire, in which Judge Marston listed the 2012 drug trafficking prosecution as one of the ten most significant litigated matters she personally handled. *Id.* at *3. Ms. Gunter further claimed that Judge Marston's failure to disclose this alleged connection

---

[2] US Airways has since merged with American Airlines.

with American Airlines and its legal affairs department, and her order requiring the parties to set aside deposition dates, were evidence of bias.[3] *Id.*

Judge Marston denied Ms. Gunter's motion because, like her motions in this case, it was poorly researched and based on suspicions divorced from fact and law. In doing so, Judge Marston explained the standard for disqualification under § 455.

### III

"The standard for recusal [under § 455] is whether an objective observer reasonably might question the judge's impartiality." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997). "[W]hat matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994). In deciding whether § 455 requires recusal, "discretion is confided in the district judge . . . because the judge presiding over a case is in the best position to appreciate the implications of those matters alleged in a recusal motion." *In re Kensington Int'l Ltd.*, 353 F.3d 211, 224 (3d Cir. 2003). In the absence of proof that a person would reasonably question the judge's impartiality, a judge "has an affirmative duty not to recuse himself." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 872 F. Supp. 1346, 1349 (E.D. Pa. 1994).

"Typically, the movant must identify an extrajudicial source of bias or prejudice." *Fields*, 2020 WL 5943694, at *6 (citing *Liteky*, 510 U.S. at 554–55 (clarifying the

---

[3] At the hearing on her motion, Ms. Gunter presented two additional instances of alleged partiality by Judge Marston toward American Airlines. *Id.* First, she noted that Judge Marston did not respond to her letter complaining about questions during the Rule 16 conference, yet Judge Marston immediately scheduled a telephone conference in response to a letter from American Airlines. *Id.* Second, Ms. Gunter questioned Judge Marston's decision granting her leave to file a third amended complaint limited to adding PHRA claims and joining plaintiffs' union as a defendant, while defendants were permitted to respond to all of the counts in the third amended complaint. *Id.* At the evidentiary hearing, Ms. Gunter also attempted to question Judge Marston directly about her alleged relationship with American Airlines. *Id.*

12

"extrajudicial source" doctrine applicable in recusal jurisprudence)). So "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" will not establish bias or partiality. *Liteky*, 510 U.S. at 555–56.

## IV

The motions are frivolous. They are based on Ms. Gunter's suspicions and evidence-free conspiracy theories.

As set forth above, I never served as outside counsel to PGW. Even had I done so six and a half years ago in a discrete and unrelated matter, that representation would not be grounds for my disqualification. The Third Circuit has held that a judge need not disqualify himself when a party he represented in private practice comes before him. *Cipollone v. Liggett Grp., Inc.*, 802 F.2d 658, 659 (3d Cir. 1986). In *Cipollone*, a party moved to vacate a panel opinion on the grounds that one of the panel judges should have recused himself. The party argued that, twelve years prior, the judge represented American Tobacco Company, a company uninvolved in, but tangentially related to, the case before him. *Id.* The Third Circuit denied the motion, saying: "Even if American Tobacco Company were a party to [this] case, the long passage of time since Judge Hunter's last representation of that Company requires the conclusion that no reasonable person could question his impartiality." *Id.* (citing *Chittimacha Tribe of Louisiana v. Harry L. Laws Company, Inc.,* 690 F.2d 1157, 1166 (5th Cir. 1982), *cert. denied,* 464 U.S. 814 (1983) (recusal not warranted where judge had represented the defendant in unrelated matters at least six years earlier); *Jenkins v. Bordenkircher,* 611 F.2d 162, 165–67 (6th Cir. 1979), *cert. denied,* 446 U.S. 943 (1980) (recusal not required

where trial judge had prosecuted defendant for several unrelated crimes during the period four to thirteen years prior to the time of trial); *Gravenmier v. United States,* 469 F.2d 66, 67 (9th Cir. 1972) (recusal not required where trial judge was of counsel in prior prosecution six years before present unrelated prosecution); *Darlington v. Studebaker-Packard Corp.,* 261 F.2d 903, 906 (7th Cir. 1959), *cert. denied,* 359 U.S. 992 (1959) (recusal not warranted where trial judge had represented defendant in unrelated matters for a period of four to five years which ended three to four years before judge's decision); *Royal Air Maroc v. Servair, Inc.,* 603 F. Supp. 836 (S.D.N.Y. 1985) (prior representation by trial judge of defendant's parent corporation in unrelated matter twelve years earlier no basis for recusal)); *see also In re Martinez-Catala*, 129 F.3d 213, 221 (1st Cir. 1997) ("[M]any judges also sit, usually after a self-imposed cooling off period, on cases involving former clients (assuming always no current financial ties and that the judge did not work on the same or a related matter while in practice). Former affiliations with a party may persuade a judge not to sit; but they are rarely a basis for compelled recusal."). In short, representation of a party before the Court in a single unrelated matter more than six years ago would require neither disclosure nor recusal because no objective, reasonable person would question the Court's impartiality.

Ms. Gunter's arguments that adherence to my Policies and Procedures, my "off-putting" comment during a telephone conference and my swift resolution of her motion to compel discovery are evidence of bias are also unavailing because they are not based on extrajudicial evidence. *See Liteky*, 510 U.S. at 555–56; *United States v. Ciavarella*, 716 F.3d 705, 720 (3d Cir. 2013) ("[T]o warrant reassignment under § 455(a), a case generally must involve apparent bias deriving from an extrajudicial source, meaning

something above and beyond judicial rulings or opinions formed in presiding over the case."). Ms. Gunter's suspicions about why her cases were reassigned to me are patently unreasonable, as is her now seemingly go-to tactic of citing judges' Senate Judiciary Committee Questionnaires.

V

Despite recently receiving an education on the law governing disqualification from Judge Marston, Ms. Gunter used similar tactics to assert similarly baseless claims in this case. But here, her conduct was even worse. Not content to proceed on her own, she recruited Mr. Green to file his own frivolous motion. Neither attorney thought this through or had any legal support for what they did.

Federal Rule of Civil Procedure 11 imposes an affirmative duty on an attorney to conduct a reasonable inquiry into the factual and legal bases of all claims before filing any document with the court. *Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991); *see also Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d Cir. 1994). Rule 11, in relevant part, provides:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b)(1)–(3).

The standard applied by the Court when determining whether an attorney has violated Rule 11 is an objective one of reasonableness under the circumstances. *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 92 (3d Cir. 1988); *see also Brubaker Kitchens, Inc. v. Brown*, 280 F. App'x 174, 185 (3d Cir. 2008) ("It is well-settled that the test for determining whether Rule 11 sanctions should be imposed is one of reasonableness under the circumstances, the determination of which falls within the sound discretion of the District Court.").

Ms. Gunter filed four half-baked and unsupported motions to disqualify and encouraged Mr. Green, whom she didn't even know, to file one in his case too. In doing so, she cost the Court and counsel valuable time and resources. Perhaps worse, she baselessly accused opposing counsel of knowing about, and concealing, a relationship between PGW and the Court that did not exist.

Rule 11 sanctions can be initiated either by motion or on the court's initiative. *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995). "When acting on its own initiative, however, the district court should first enter an order describing the specific conduct that it believes will warrant sanctions and direct the person it seeks to sanction to show cause why particular sanctions should not be imposed." *Id*. (referencing Fed. R. Civ. P. 11(c)(1)(B)); *see also* Fed. R. Civ. P. 11(c)(3) ("When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed."). The Court's Opinion today will be accompanied by a separate Order to Show Cause directing Ms. Gunter to address the Court's concerns, as enumerated in that Order.

The Court will not enter such an order with respect to Mr. Green. Ms. Gunter, who knew better from her come-uppance by Judge Marston, was the ringleader. She concocted the reasons for her motions to disqualify and then, perhaps thinking strength would lie in numbers, sought out Mr. Green, gave him a copy of one of her motions and encouraged him to join in the fun. Mr. Green made no effort to independently research or verify any of the allegations against the Court. He instead reflexively copied the motion he received from a lawyer he didn't know and filed it. His conduct was no less malevolent than Ms. Gunter's, but his thirty-eight years of practice without filing such a motion spares him, at this time, from having to explain himself or blame his client further.

BY THE COURT:

 */s/ Gerald J. Pappert*  
GERALD J. PAPPERT, J.